**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                )

**GREGORY JOHN KATOPODIS,**     )
                                )

     **Plaintiff,**              )

                                )     **Civil Action No.**
     **v.**                     )     **15-13817-FDS**

                                )

**NELSON ELIAS and**           )
**DARREN BROWN,**             )

                                )

     **Defendants.**          )
_____)

**MEMORANDUM AND ORDER**
**ON DEFENDANTS' MOTION TO DISMISS**

**SAYLOR, J.**

    This is a civil rights action brought by a former federal prison inmate.  On November 13, 2015, Gregory Katopodis filed a *pro se* complaint asserting personal injury and civil rights claims against defendants Nelson Elias and Darren Brown, who are correctional officers.

    The complaint alleges various constitutional violations based on plaintiff's placement in isolation while incarcerated at Federal Medical Center Devens in March and April 2012. Defendants have moved to dismiss the complaint, contending that the claims are barred by the applicable three-year statute of limitations and that he has failed to perfect service on the defendants.  For the following reasons, the motion to dismiss will be granted.

**I.**      **Background**

    Gregory Katopodis is a former inmate of Federal Medical Center Devens in Ayers, Massachusetts.  Defendants Nelson Elias and Darren Brown were correctional officers at FMC Devens.

    Katopodis contends that defendants violated his constitutional rights by "arresting [him]

without cause and incarcerating him in isolation in the Special Housing Unit commonly known

as the 'SHU' or 'hole,'" and holding him there for 28 days in retaliation for a letter he attempted

to send to Senator Jeff Sessions.  Compl. ¶ 7.  The complaint further alleges that while in

isolation, Katopodis was denied proper medical care, not allowed to contact his attorney, and

was "housed in . . . an approximately six by ten foot cell with continuous bright overhead

lighting 24 hours a day [with] no window to the outside, a toilet that would not flush, and a sink

that dripped continuously."  *Id.*  On completion of his time in the SHU, Katopodis alleges that

defendants intentionally arranged for his transfer to federal prison at Fort Dix, New Jersey, on

Good Friday, "spitefully and intentionally denying [him] access to religious services to allow

plaintiff his Catholic obligation to fulfill his Easter duty."  *Id.* ¶¶ 7, 9.  The complaint alleges that

Katopodis suffers as a result from "symptoms of post-traumatic stress disorder and severe sleep

disruption."  *Id.* ¶ 8.

## II.    Procedural History

On November 13, 2015, Katopodis filed a *pro se* complaint asserting personal injury and

civil rights claims under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971),

against defendants Elias and Brown.  The complaint alleges violations of the First, Fourth, Fifth,

Sixth, and Eighth Amendments of the United States Constitution.  Defendants responded to the

complaint with a motion to dismiss, contending that plaintiff's claims are barred by the three-

year statute of limitations applicable to *Bivens* claims and that he has failed to perfect service on

the defendants.

At a hearing on the motion to dismiss, plaintiff asserted for the first time that the

complaint was timely because, among other reasons, he was entitled to equitable tolling of his

claim based on mental disability.  Following the hearing, the Court issued an order to show cause

instructing plaintiff to supplement the record with evidence sufficient to establish a *prima facie* case that his condition met the standard for equitable tolling based on mental disability.[1]

## III.    <u>Legal Standard</u>

On a motion to dismiss, the court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted). A document filed by a *pro se* party "is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted).  *See also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

---

[1] The Court also ordered plaintiff to show cause as to why the complaint should not be dismissed for failure to perfect service on defendants.  Because the complaint will be dismissed as untimely, the Court need not address the issue of service.

IV.  **Analysis**

The government contends that plaintiff's claims are barred by the statue of limitations.

"[C]ourts generally [apply] state statutes of limitations to *Bivens* actions notwithstanding the fact

that such actions lie only against federal officers."  *Rossiter v. Potter*, 357 F.3d 26, 34 n.7 (1st

Cir. 2004).  In Massachusetts, both civil rights and tort actions are subject to a three-year

limitations period.  Mass. Gen. Laws ch. 260, §§ 2A, 5B.  Plaintiff's *Bivens* claims are therefore

subject to the same limitations period.  *Barrett ex rel. Estate of Barrett v. United States*, 462 F.3d

28, 38 (1st Cir. 2006).[2]

A.  **Claim Accrual**

"[T]he question of when a cause of action accrues in a civil rights case is a matter of

federal law."  *Nieves v. McSweeney,* 241 F.3d 46, 52 (1st Cir. 2001).  "Under federal law, the

statute of limitations [period] on a *Bivens* claim begins to run when the plaintiff knows or has

reason to know of the existence and cause of the injury which is the basis of his action."  *Barrett*,

462 F.3d at 38-39 (quoting *Van Tu v. Koster*, 364 F.3d 1196, 1199 (10th Cir. 2004; *cf. Donahue

v. United States*, 634 F.3d 615, 623 (1st Cir. 2011) (Under the "discovery rule," a Federal Tort

Claims Act claim accrues when the plaintiff "knows or reasonably should have known the

factual basis for his claim; that is, the existence of his injury and its cause.").  For accrual to be

delayed, "the factual basis for the cause of action must have been inherently unknowable [that is,

not capable of detection through the exercise of reasonable diligence] at the time of the injury."

*Sanchez v. United States*, 740 F.3d 47, 52 (1st Cir. 2014) (quoting *Gonzalez v. United States*, 284

---

[2] Plaintiff contends that Mass. Gen. Laws ch. 260, § 3, which provides for a four-year limitations period for "[a]ctions against sheriffs for the misconduct or negligence of their deputies," should apply here.  That statute however, applies only to "actions against a sheriff 'in the matter of his official responsibility for the default of his deputies.'"  *King v. Sheriff of Franklin Cty.*, 38 Mass. App. Ct. 925 (1995) (quoting *Sibley v. Estabrook*, 4 Gray 295, 296 (1855)).  Defendants, however, are federal correctional officers.

F.3d 281, 288-89 (1st Cir. 2002)).

Accepting the allegations in the complaint as true, Katopodis was first injured when he was placed into isolation on March 14, 2012, in alleged retaliation for his attempt to send a letter to Senator Sessions.  Construing the complaint liberally, Katopodis was injured a second time when he was transferred to Fort Dix, New Jersey, on April 6, 2012.  Thus, in the absence of the discovery rule, Katopodis's claim would have accrued no later than April 6, 2012.

Katopodis contends that his cause of action did not accrue until his post-traumatic stress disorder and mental health issues were diagnosed as being caused by his time in isolation.  But even assuming the discovery rule applies, the accrual of a claim is not delayed until the plaintiff learns the full extent of his injury.  *See Gonzalez*, 284 F.3d at 289.  Accordingly, Katopodis's injury occurred when he was placed in isolation, and the accrual of his claim was not delayed until that initial injury was diagnosed as PTSD several years afterwards.  In short, Katopodis knew of his injury (being placed in isolation) and its alleged cause (the actions of the defendants) no later than his alleged wrongful transfer to Fort Dix on April 6, 2012.  Accordingly, his claim accrued no later than that date.

### B.    Equitable Tolling

In the alternative, Katopodis contends that even if his claim accrued more than three years before he filed suit, the limitations period should be equitably tolled based on mental disability.  Equitable tolling based on mental disability is available only when the plaintiff can show that "the mental disability was so severe that the plaintiff was '[un]able to engage in rational thought and deliberate decision making sufficient to pursue [his] claim alone or through counsel.'"  *Melendez-Arroyo v. Cutler-Hammer de P.R. Co.*, 273 F.3d 30, 37 (1st Cir. 2001) (alterations in the original) (quoting *Nunnally v. MacCausland*, 996 F.2d 1, 5 (1st Cir. 1993)).

Plaintiff contends that he experienced severe depression as a result of being placed in isolation during his incarceration, and that his depression prevented him from pursing litigation. In support, he has submitted medical records and letters from his healthcare providers attesting to his condition.  The earliest of those records is from an October 17, 2012 consultation with a Dr. Hochberg at Whittier Street Health Center in Roxbury, Massachusetts.  At that visit, Dr. Hochberg noted that Katopodis was "well appearing and in no apparent distress" and that his "mood and affect were appropriate."  Pl. Resp. Ex. 8 at 4-5.

Katopodis also submitted a letter from his primary care physician, Dr. James Blake.  Pl. Resp. Ex. 10.  Dr. Blake stated that in 2013, Katopodis was "clearly distracted [and] unable to focus on any complex topic for a significant period of time."  *Id.*  Dr. Blake further states "unequivocally" that during the time immediately after Katopodis's release from a halfway house in Boston, "it would have been impossible for [Katopodis] in his condition of severe depression to mount any significant legal task that required intellectual focus or sustained reasoning ability."  *Id.*[3]

At an April 29, 2014 visit to Massachusetts General Hospital, Katopodis self-reported symptoms of "major depressive disorder," "occasional weeping," a decrease in productivity, and feeling moderate anxiety, tension, and a loss of concentration.  *See* Pl. Resp. Ex. 9 at 5, 7, 12, 14. In May 2014, Katopodis reported having a "mild" depressed mood, characterized by "feeling sad, discouraged, pessimistic, [and] low self-esteem . . . almost all of the time."  *Id.* at 57.  He also reported a "severe (profound reduction in interest, pleasure, and functioning)" loss of interest in work activities, occurring 3-5 times per week.  *Id.* at 62.[4]

---

[3] It appears that Katopodis was released from the halfway house in November 2012.

[4] Katopodis has also submitted two signed letters from psychiatrists who evaluated him beginning in January 2016.  Pl. Exs. 11, 12.  Although those letters are evidence that he currently suffers from major depression

Those reports and materials are evidence that Katopodis suffers or has suffered from depression, possibly severe, and some form of post-traumatic stress disorder. However, "'establish[ing] a diagnosis such as severe depression is not enough.' Rather, the alleged severe mental illness must be marked by a significantly reduced capacity to make rational decisions." *Bartlett v. Department of the Treasury (I.R.S.)*, 749 F.3d 1, 14 (1st Cir. 2014) (quoting *Melendez-Arroyo*, 273 F.3d at 38).

The evidence in the record, even viewed favorably to the plaintiff, simply does not rise to that level. Indeed, the evidence overwhelmingly indicates that any mental health issues suffered by Katopodis did not prevent him from engaging in rational thought and deliberate decision-making sufficient to pursue his claim. Among other things, the record contains numerous memoranda and notes handwritten by Katopodis himself in pursuit of his administrative remedies while incarcerated. Perhaps most importantly, it also contains three letters written by counsel on his behalf during the relevant period.

In a March 22, 2012 "memo" from Katopodis to Deputy Warden Russell, Katopodis noted his difficulty in contacting his lawyer and complained that he was not being given access to his property. Compl. Ex. 6. It further stated that he was being held as an act of retaliation for contacting a United States senator, and that he had a right to seek "a redress of grievances" that was "guaranteed by the First Amendment." (*Id.*). And it concluded that impeding his right to seek redress would violate his "civil rights," for which "a 1983 action would be appropriate." (*Id.*).

On March 27, 2012, Katopodis wrote to his doctor:

I am subject to hypertensive emergencies, and have not received my medications

---

and post-traumatic stress disorder, they do not shed much light on his mental capacity (or incapacity) during the limitations period, which ended in 2015.

in the past 6 days.  Can you respond in writing below as to what are some of the potential consequences of missing my regular dosage for this long?

Compl. Ex. 7.  Two days later, Katopodis submitted a request for access to his property.  In that request, he specifically noted, "I especially need access to my files to retrieve documents I need for appeal of my UDC hearing of 3/27/12 received last night.  Thanks very much."  Compl. Ex. 9.

In an April 5, 2012 letter to Elias, Katopodis wrote, "I need to immediately file my appeal regarding the incident report of 3/23/12."  Compl. Ex. 12.  In the same letter, Katopodis requested access to documents and materials to facilitate the appeal, requested a response to his earlier requests for access to his lawyer, inquired about a lost property claim, and requested information on several other small items.  *Id.*

The record also contains a detailed written statement by Katopodis submitted with his appeal to prison authorities.  Compl. Ex. 14.  Although the statement is not dated, its context clearly indicates it was written after March 31, 2012.  That statement includes Katopodis's analysis of a Bureau of Prisons memorandum from the General Counsel's office and an argument as to how the BOP memo applied to his situation.  *Id.*

It is also significant that Katopodis was represented by counsel during this period.  A plaintiff is also not entitled to equitable tolling for mental illness or incapacity where the plaintiff is able to secure representation by counsel during the limitations period.  *See Lopez v. Citibank, N.A.*, 808 F.2d 905, 907 (1st Cir. 1987); *Melendez-Arroyo*, 273 F.3d at 37 ("*Lopez* rejected the claim [for equitable tolling based on mental illness] because the plaintiff had been represented by counsel.").

On March 28, 2012, Attorney Richard Branson wrote to Warden Grondolsky on Katopodis's behalf:

Dear Warden Grondolsky:

Notice is hereby given that placing my client, Gregory John Katopodis, in the "SHU" on spurious and unconstitutional grounds is an intentional and retaliatory act which has endangered his health . . . . His continued confinement in the "SHU" and the failure to provide him his medication endangers his life.

His correspondence with Senator Sessions regarding the Second Chance Act is clearly the motivation for this intentional mistreatment. . . .

On behalf of my client, who is close to sixty-five years old, demand is hereby made that you remove him immediately from solitary confinement for the sake of his health.

Compl. Ex. 1.

On April 2, 2012, Branson wrote directly to defendant Elias.  That letter begins, "I spent three hours with my client on Saturday going over the details of the recent intentional mistreatment of him."  Compl. Ex. 5.  On May 11, Branson wrote again to Warden Grondolsky. Among other things, he raised "several issues to which I would appreciate your response." Compl. Ex. 4.  Two of the "issues" he raised directly address Katopodis's claims that he was not provided his medication, and that his transfer to Fort Dix was wrongful:

2.      Mr. Katopodis's daily log, kept while he was held in the SHU, records all interactions with medical and other staff and shows three dispensations of medications as further documented in the attached pharmacy records.  Do you show in his medical records any other times medications were dispensed to him?
                                    . . . .

4.      Are inmate transfers farther from probation release locations routine and ordinary for sixty five year old inmates with only one security point and six months remaining on their sentence?

*Id.*

Katopodis's letters and memoranda, and those sent on his behalf by Attorney Branson, establish beyond question that he possessed the mental ability to pursue his claims.  Indeed, he did pursue them, both *pro se* and through counsel.  In light of that evidence, there can be little

9

doubt that Katopodis possessed sufficient capacity at the time of his injury "to engage in rational thought and deliberate decision making sufficient to pursue [his] claim," both on his own and through counsel. *See Melendez-Arroyo*, 273 F.3d at 37 (quoting *Nunnally*, 996 F.2d at 5). Accordingly, he is not entitled to benefit from equitable tolling of his claim based on mental disability. In summary, the *Bivens* claims asserted by Katopodis accrued no later than April 6, 2012; in the absence of tolling, the limitations period expired on April 6, 2015. Because Katopodis did not bring his claim until November 13, 2015, the complaint must be dismissed as untimely.

**V.** <u>**Conclusion**</u>

For the foregoing reasons, defendant's motion to dismiss is GRANTED.

**So Ordered.**

/s/  F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: July 6, 2016